NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

AL-QUADIR WEBB,

        *Plaintiff*,

v.

CITY OF NEWARK, et al.,

        *Defendants.*

Civil Action No. 12-3592

OPINION

**ARLEO, UNITED STATES DISTRICT JUDGE**

    **THIS MATTER** comes before the Court by way of the summary judgment motion of Defendants Police Officer Wyhidi Wilson ("Wilson"), Police Officer Kevin Johnson ("Johnson") (together, the "Officers"), Newark Police Department Director Samuel A. DeMaio ("DeMaio"), the Newark Police Department and the City of Newark (all together, the "Defendants"). ECF No. 64. For the reasons set forth below, Defendants' motion is **GRANTED**.

**I.**   **BACKGROUND**

    This case arises from the shooting of Plaintiff Al-Quadir Webb ("Webb" or "Plaintiff") on October 15, 2011 by Officer Wilson as Webb attempted to flee an interaction with the officer. Webb was rendered a paraplegic as a result of the incident. Am. Compl. ¶ 81, ECF No. 29. He subsequently died on May 22, 2014. Id. ¶ 2. Now, through Jomear K. Martin, the administrator of Webb's estate, Webb brings this action under 42 U.S.C. § 1983 and § 1988 and corresponding provisions of the New Jersey Constitution, under the New Jersey Tort Claims Act ("NJTCA"), N.J.S.A. § 59.1-1 et seq., and under New Jersey common law to challenge the Officers' actions

1

against him and to challenge the supervision and training of the Officers by the remaining Defendants. Am. Compl. ¶¶ 88-170. The facts of the encounter, in the light most favorable to the Plaintiff, are as follows.[1]

### 1. Probable Cause for Traffic Stop

On October 15, 2011, Officer Wyhidi Wilson and Officer Kevin Johnson of the Newark Police Department were parked in their marked police car on Clinton Avenue in Newark when they noticed a white Chrysler 300 because they heard "tires screeching" and believed the car to be traveling at "a high rate of speed." Def. R.56 Stmt. ¶ 9, ECF No. 64-2; Pl. R.56 Stmt. ¶¶ 4-5, ECF No. 68-4.[2] The Chrysler, driven by Webb, passed the officers and made a left turn on Johnson Avenue. Def. R.56 Stmt. ¶ 10. Webb parked on the westbound side of Johnson Avenue in front of 25 Johnson Avenue and stepped out of the car. Id. ¶¶ 10-12. The officers made a u-turn and began following the car with their emergency lights and sirens activated. Id. ¶ 11. The officers stopped their police car behind the Chrysler. Id. The officers intended to effectuate a traffic stop. Id. ¶ 10.[3]

---

[1] All facts are drawn from the Defendants' Statement of Undisputed Facts ("Def. R.56 Stmt") (to the extent Plaintiff does not dispute the facts), ECF No. 64-2; Plaintiff's Responsive Statement of Undisputed Material Facts ("Pl. Resp. Stmt."), ECF No. 68-3; and Plaintiff's Statement of Disputed Material Facts ("Pl. R.56 Stmt."), ECF No. 68-4. Any disputed fact for which Plaintiff has cited countervailing evidence has been construed in Plaintiff's favor. However, blanket denials by Plaintiff's counsel absent citations to the record are insufficient to raise a material issue of fact.
[2] Plaintiff does not dispute that Wilson heard the sound of screeching tires, Pl. R.56 Stmt. ¶ 4, or that Johnson observed the Chrysler traveling at a high rate of speed, Pl. R.56 Stmt. ¶ 5. Plaintiff points to the fact that Johnson could not determine the exact speed at which the Chrysler was driving, and that Johnson had not written any speeding tickets that year, Pl. R.56 Stmt. ¶ 6, but these facts do not raise a material issue of fact as to whether the officers had probable cause to effectuate a traffic stop of Webb. In any event, the officers had reasonable suspicion for the subsequent Terry stop, as discussed infra.
[3] Plaintiff disputes the officers' claim that they intended to effectuate a traffic stop because, Plaintiff says, they never verbally communicated to each other their intent to stop the Chrysler for a motor vehicle infraction and because they never told Webb that he was being stopped for a

2

### 2. Reasonable Suspicion to Conduct a Terry[4] Stop

Wilson saw Webb exit the Chrysler, and testified that he observed Webb holding his right-hand side waistband area in a manner that indicated to Wilson that Webb might be carrying a weapon. Id. ¶ 12. Wilson approached Webb and instructed Webb to remove his hand from his waistband area in order to effectuate a lawful Terry stop.[5] Def. R.56 Stmt. ¶ 13. Wilson and Johnson were dressed in full uniform. Id. ¶ 8. Webb replied, "Fuck that." Id.; Pl. R.56 Stmt. ¶ 15. Plaintiff admits that "[a]fter being told to show his hands, [Webb] ran back" to the Chrysler and re-entered the vehicle. Id. ¶ 17. Wilson ran toward Webb and the Chrysler, yelling at Webb to show Wilson his hands, to no avail. Def. R.56 Stmt. ¶ 14. Webb got into the driver's seat of the Chrysler and tried to shut the door, but Wilson positioned himself between the door and the driver's seat. Id. ¶ 15.[6]

### 3. The Shooting of Webb

Wilson then observed Webb attempt to start the car with his right hand. Id. ¶ 16. At the same time, Wilson saw Webb's left hand reach toward Webb's right side, leading Wilson to believe Webb was armed with a gun. Pl. R.56 Stmt. ¶ 21. Wilson wrestled with Webb to gain

---

traffic violation. Pl. Resp. Stmt. ¶ 10. These facts are insufficient to create a material issue of fact as to whether the officers had probable cause to conduct a lawful traffic stop.

[4] When a police officer reasonably believes that a person with whom he or she is dealing may be armed and dangerous, the officer may conduct a brief pat-down of the person's outer garments to search for weapons. Terry v. Ohio, 392 U.S. 1, 26 (1968).

[5] Plaintiff concedes that Wilson believed Webb was armed. Pl. R.56 Stmt. ¶¶ 13, 23. Yet Plaintiff points to the fact that Wilson did not draw his gun at this point in the encounter to suggest that Wilson did not reasonably suspect that Webb was armed and dangerous. Id. ¶ 14. That Wilson did not yet draw his gun does not create a material issue of fact as to whether Wilson reasonably believed Webb was armed.

[6] Plaintiff does not contest that Wilson was positioned between the door and the driver's seat of the Chrysler. Pl. Resp. Stmt. ¶ 15. Plaintiff attempts to raise a fact issue as to whether Wilson's left leg was in the car or on the ground outside the vehicle. Pl. R.56 Stmt. ¶ 19-20. But this detail does not raise a material issue of fact as it is undisputed that Wilson was positioned between the car and its door during this encounter.

control of Webb's left hand. Def. R.56 Stmt. ¶ 16. Wilson continued to issue commands to Webb—"Don't start the car" and "Let me see your hands"—and Webb again responded, "Fuck you." Id. Plaintiff admits that Webb started the car and put it in gear to drive away. Pl. R.56 Stmt. ¶ 24. Plaintiff claims Wilson then told Webb that "if [Webb] drove away, he [would] be shot." Id.

Plaintiff admits that, after putting the car into gear, Webb "stepped on the gas." Id. ¶ 26. Wilson screamed for Webb to stop the car. Def. R.56 Stmt. ¶ 18. Wilson drew his weapon and fired three times. Id.; Def. R.56 Stmt. ¶¶ 18, 21. It is undisputed that Wilson was still positioned between the body of the car and the door at the moment the car began to move. Id. ¶ 17.[7]

Of the three bullets fired, one struck Webb in his upper back and became lodged in his spine. Def. R.56 Stmt. ¶ 31. This injury rendered him a paraplegic. Id. A second bullet struck the rear bumper of Webb's car. Id. ¶ 107e. There is no evidence of the flight path of the third bullet. Id. ¶ 107f.[8] Johnson did not discharge his weapon during this incident. Id. ¶ 28.

---

[7] Defendants maintain that Wilson was "pulled along with the vehicle" as it began to move. Def. R.56 Stmt. ¶ 19. Plaintiff denies this, and maintains that Wilson was not "dragged by the car at any time." Pl. R.56 Stmt. ¶ 27. Plaintiff's repeated insistence that Wilson was not "dragged" is an insufficient attempt to raise a fact issue as to whether Wilson was placed in any danger during his interaction with Webb.
During his deposition, Wilson testified that he was "half inside the car" when the car began to move, and that he was "in fear that [he] was going to be dragged down the street if [Webb] continued to drive." Def. R.56 Stmt., Ex. C ("Wilson Dep.") at 91:23-25, ECF No. 64-6. Plaintiff contests Wilson's claim that he was "half inside the car" but does not contest that Wilson was positioned between the body of the car and the driver's side door. Pl. Resp. Stmt. ¶ 19; Pl. R.56 Stmt. ¶ 19. Plaintiff also denies that Wilson feared for his own safety. Pl. Resp. Stmt. ¶ 20; Pl. R.56 Stmt. ¶ 28. Plaintiff's blanket denial, given that it is undisputed that Wilson was positioned between the door and the body of the Chrysler when it began to move, is insufficiently to raise a material issue of fact as to whether Wilson reasonably feared for his own safety.
[8] An expert report, produced at the direction of Defendants and cited by both parties, concludes that the forensic evidence is consistent with the undisputed facts. Pl. R.56 Stmt., Ex. 7 at 10. The report explains that Wilson was hit by the open driver's side door as the car began to

After the shots were fired, Webb's Chrysler continued down Johnson Avenue until it struck a parked car and flipped on its side. Def. R.56 Stmt. ¶¶ 22-23. Webb was subsequently charged with aggravated assault, possession of a weapon (a motor vehicle) for an unlawful purpose, unlawful possession of a weapon (a motor vehicle), resisting arrest, and various traffic infractions. Id. ¶¶ 35-36.

Webb, through the administrator of his estate, brings this action against Officers Wilson and Johnson for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, Am. Compl. ¶¶ 108-23 (Count Two), and for assault and battery under state law, id. ¶¶ 144-53 (Count Five); against DeMaio, Newark Police Department, and the City of Newark for adopting policies or customs that allow the use of excessive force in violation of the Fourth Amendment, id. ¶¶ 88-107 (Count One), 137-43 (Count Four), for assault and battery under a theory of respondeat superior, id. ¶¶ 144-53 (Count Five), and for negligent hiring and retention, id. ¶¶ 154-66 (Count Six); and against all defendants for wrongful death, id. ¶¶ 167-69 (Count Seven).[9]

## II. LEGAL STANDARD

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v.

---

accelerate, that he fired the first shot with his left hand through the driver's side door window, and that he fired the second two shots as he separated from the car. Id.

[9] Plaintiff appears to have abandoned Count Three, Am. Compl., ¶¶ 124-36, which alleges that the non-officer Defendants violated Webb's Fourth Amendment rights by restraining his freedom while he was at the University of Medicine and Dentistry of New Jersey hospital following the shooting. See Plaintiff's Status Update Letter filed Nov. 20, 2015, ECF No. 40. Even if this claim were still viable, Plaintiff cannot point to any evidence in the record that supports any of the essential elements of this claim. See Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d. Cir. 1995). As there is no genuine issue of material fact that would permit a reasonable jury to find for the Plaintiff on this claim, Defendants are entitled to summary judgment on this count. See Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988).

Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). "[S]ummary judgment may be granted only if there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." Miller v. Ind. Hosp., 843 F.2d 139, 143 (3d Cir. 1988). When the Court considers a motion for summary judgment, "all facts and inferences are construed in the light most favorable to the non-moving party." Boyle v. Cty. of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998).

## III. ANALYSIS

### A. Qualified Immunity as to Officer Wilson (Count Two)

This suit implicates the doctrine of qualified immunity. The doctrine of qualified immunity "shields officers from civil liability [under § 1983] so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (quoting Pearson v. Callahan, 555 U.S. 223, 231 (2009)). A public official is entitled to qualified immunity from suits for civil damages if the official's conduct did not violate a constitutional right or if that right was not clearly established at the time of the conduct. Saucier v. Katz, 533 U.S. 194, 201-02 (2001). A right is "clearly established" when it is "'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" Mullenix, 136 S. Ct. at 308 (quoting Reichle v. Howards, 566 U.S. 658, 664 (2012)). A district court may consider the two inquiries in either order. Pearson, 555 U.S. at 236.

Since "qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Pearson, 555 U.S. at 231 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). Therefore, the Court addresses the issue of whether Wilson is entitled to qualified immunity for liability under 42 U.S.C. § 1983 first.

6

### 1. Whether A Constitutional Right Was Violated

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures." There is no doubt that Officer Wilson's act of shooting Webb constitutes a seizure. See Tennessee v. Garner, 471 U.S. 1, 7 (1985) ("apprehension by the use of deadly force is a seizure."). Officers may use force when seizing a suspect, but the amount of force must be objectively reasonable based on the totality of the circumstances. Graham v. Conner, 490 U.S. 386, 395-96 (1989). Reasonableness is judged "from the perspective of the officer at the time of the incident and not with the benefit of hindsight." Santini v. Fuentes, 795 F.3d 410, 417 (3d Cir. 2015). Among the factors considered to determine whether the amount of force used was reasonable are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

An officer's use of deadly force to prevent the escape of a fleeing suspect is presumptively unreasonable unless "it is objectively reasonable for the officer to believe, in light of the totality of the circumstances, that deadly force was necessary to prevent the suspect's escape, and that the suspect posed a significant threat of death or serious physical injury to the officer or others." Thompson v. Howard, 679 Fed. App'x 177, 181 (3d Cir. 2017) (quoting Abraham v. Raso, 183 F.3d 279, 289 (3d Cir. 1999)). Put another way, the use of deadly force on a fleeing suspect does not amount to a constitutional violation when "the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." Garner, 471 U.S. at 3.

In applying the Graham factors, the Court takes care to construe the facts as alleged by the Plaintiff, and to give deference to the split-second decisions police officers must make in tense, uncertain, and rapidly evolving situations. Graham, 490 U.S. at 396-97.

Here, the continuum of events makes clear that Webb's Fourth Amendment rights were not violated. When Wilson and Johnson heard the sound of screeching tires and saw a car traveling at a high rate of speed, they had probable cause to stop Webb for a moving vehicle violation. They intended to effectuate a traffic stop, but the encounter quickly changed in tenor. Plaintiff, who parked his car before the officers' car came to a full stop behind him, exited the Chrysler and began to walk away from it.[10]

Wilson then observed Plaintiff holding his waistband in a manner that gave him reasonable suspicion that Plaintiff was armed, and he attempted to initiate a Terry stop by asking Webb to remove his hands from his waistband. Webb refused to comply. Instead, Webb replied, "Fuck you" and ran back to his car.

Webb escalated the situation. As Webb tried to start the ignition, Wilson yelled "Don't start the car" and "Let me see your hands," again, trying to effectuate a lawful stop. Wilson positioned himself between the body of the Chrysler and the driver's side door, with at least one foot on the ground but at least one of his arms inside the car. Wilson struggled to gain control of Webb's hands. Webb started to drive and Wilson screamed at him to stop. A reasonable officer

---

[10] In Plaintiff's brief, Plaintiff claims Webb had "no reason to believe that he [was] the reason the police car ha[d] stopped." Pl. Opp. Br. at 17. Plaintiff claims that "this area of Newark is dark and full of terrors" and that "[s]eeing a police car with lights and siren is not a[n] unfamiliar sight." Id. In essence, Plaintiff argues that Webb was not fleeing a traffic stop but rather lawfully exiting his parked vehicle. Even assuming this were true, it does not change the fact that the officers had probable cause for the stop and witnessed Webb appear to evade their traffic stop by parking and exiting his car upon seeing the lights and hearing the sirens of their police vehicle.

8

would be justified in taking these steps to prevent a person whom he had just witnessed driving fast and evasively, whom he reasonably believed was armed with a gun, and who instead of complying with a lawful Terry stop announced "Fuck you," from driving away. Despite the fact that the car's driver's side door was open, that Wilson had at least one arm inside the car, that Wilson's body was in between the car and the door, and that the officer screamed at Webb to stop, Webb stepped on the gas and started to drive away.

Under the totality of the circumstances, at that moment, a reasonable officer would have feared for his or her life and for the lives of others. See Brousseau v. Haugen, 543 U.S. 194, 200 (2004) (noting that a car may be used as a deadly weapon); State v. Parker, 198 N.J. Super. 272, 279 (App. Div. 1984) (same). Wilson, indeed, testified that he feared he would be hurt or killed by the moving Chrysler. The fact that Wilson was hit by the driver's side door as the car began to move only increased his reasonable fear of bodily harm or death. Moreover, the evidence in the record makes clear that pedestrians—such as Ms. Jones—and Officer Johnson were in the area, and a reasonable officer would have feared for their safety as well.

The record is clear that Wilson fired three shots and that he fired the first shot—the one that struck Webb—as the car began to move. Given the fact that Webb was actively attempting to flee, that his actions in doing so posed an immediate risk of harm to Wilson and to others, and that this was a tense and rapidly evolving situation, the Court finds that Wilson's resort to lethal force was not unreasonable and did not violate Webb's Fourth Amendment rights. Under the totality of the circumstances, it would not be objectively unreasonable for an officer in Wilson's position to believe that his life and the lives of others were in danger and to resort to deadly force.

**2. Whether That Right Was Clearly Established**

Even if the Court were to find that Wilson violated Webb's Fourth Amendment rights, Webb would still be entitled to qualified immunity under the second prong of the analysis. Supreme Court and Third Circuit law supports the conclusion that a reasonable officer would not have believed that Wilson's actions here violated Webb's constitutional rights. At the qualified immunity stage, "the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct. If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The Court need not point to "a case directly on point"; rather, the question is whether "existing precedent . . . placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011).

The Supreme Court has repeatedly held that "the use of deadly force in connection with a dangerous car chase" does not "violate the Fourth Amendment, let alone [serve as] as basis for denying qualified immunity." Mullenix, 136 S.Ct. at 310. See also Plumhoff v. Rickard, 134 S. Ct. 2012, 2022 (2014) (holding that an officer's use of deadly force when terminating a car chase did not violate the Fourth Amendment); Scott v. Harris, 550 U.S. 372 (2007) (same).

The same is true even in an incident that is not yet a car chase. In Brosseau v. Haugen, an officer pursued a suspect who ran to his car. 543 U.S. at 196. The officer banged on the driver's side window with her handgun, eventually shattering the window. Id. The suspect nevertheless succeeded in starting the ignition. Id. As the car "started or shortly after it began to move, [the officer] jumped back and to the left. She fired one shot through the rear driver's side window" which hit the suspect. Id. at 196-97. The officer explained that she was "'fearful for the other officers on foot who [she] believed were in the immediate area, [and] for the occupied vehicles in

10

[the officer's] path, and for any other citizens who might be in the area.'" Id. at 197. The Supreme Court held that the officer did not violate clearly established law when she shot the suspect under these circumstances. Id. at 201.

In Thompson v. Howard, an officer attempted to handcuff a suspect who fled to his car. 679 Fed. App'x 177 (3d Cir. 2017). The suspect jumped into the driver's seat, locked the door, and started the ignition. Id. at 179. The officer smashed the window with his baton and reached into the car to try to stop the suspect from driving away. Id. With the officer's hands still inside the vehicle, the suspect put the car in gear and began to drive away. Id. The suspect hit the officer's police cruiser, then drove around it by driving across a resident's yard and driveway. Id. While the suspect was 10 to 12 feet away from the officer, the officer shot at the suspect five times and the officer's partner shot an additional time. Id. None of the bullets hit the suspect, who sued the officers for violating his Fourth Amendment rights by using excessive force. Id. at 180. The Third Circuit held that the officers did not violate clearly established law when they shot after the suspect, who had demonstrated reckless disregard for the safety of others. Id. at 183.

In light of Supreme Court and Third Circuit law, the Court cannot conclude that it was clearly established that Wilson's act of shooting a suspect fleeing in a vehicle while Wilson was positioned between the body of the vehicle and the door was excessive and in violation of Webb's constitutional rights. As did the officers in Brosseau and Thompson, Wilson shot a fleeing suspect after the suspect turned on the ignition of the Chrysler and, as in Thompson, while at least one of Wilson's arms was in the car. As in Brosseau, Wilson fired as Webb's car began to move. And a reasonable officer in Wilson's position would have feared for his own safety and that of those around him.

11

Plaintiff points to Abraham v. Russo, 183 F.3d 279 (3d Cir. 1999), in support of his contention that Wilson's actions violated clearly established law. But that case concerned a fleeing suspect who did not come into any physical contact with the police officer who shot him. Moreover, Russo did not address the issue of qualified immunity; the Third Circuit simply found that there was an issue of fact as to whether the fleeing suspect posed a risk to an officer and held that summary judgment was inappropriate.

The Court cannot identify a case where an officer acting under similar circumstances as Officer Wilson was held to have violated the Fourth Amendment. White v. Pauly, 137 S. Ct. 548, 522 (2017). The existing law on the issue of excessive force in the context of fleeing suspects does not demonstrate that it was clearly established that Wilson's conduct violated Webb's constitutional rights. Accordingly, Wilson is entitled to qualified immunity from § 1983 liability.

### B. Plaintiff's Remaining Claims

#### 1. State Law Claims Against Wilson: Assault, Battery, and Wrongful Death (Counts Five and Seven)

Plaintiff brings two additional claims against Wilson: for assault and battery and for wrongful death. Plaintiff brings these claims under NJTCA, N.J.S.A. § 59:1-1 et seq. See Am. Compl. ¶ 1. NJTCA grants immunity from liability for actions of public employees while in pursuit for law enforcement purposes. N.J.S.A. § 59:5-2(c) ("Neither a public entity nor a public employee is liable for . . . any injury resulting from or caused by a law enforcement officer's pursuit of a person."). This immunity extends to "all injuries arising out of a police pursuit, even those that would not have occurred but for the negligence of the police." Epifan v. Roman, No. 11-cv-02591, 2014 WL 4828606, at *16 (D.N.J. Sept. 29, 2014) (citing Alston v. City of Camden, 168 N.J. 170, 177 (2001)). NJTCA immunity also extends to a public actor who "acts in good

faith in the execution or enforcement of any law." N.J.S.A. § 59:3-3. However, NJTCA immunity does not extend to public employees if their conduct "constituted a crime, actual fraud, actual malice, or willful misconduct." N.J.S.A. § 59:3-14(a). Given the reasonableness of Wilson's decision to resort to lethal force in light of his fear of bodily harm or death, the Court finds that he did not act criminally, fraudulently, with actual malice, or with willful misconduct, and is entitled to immunity from claims under NJTCA. See Fielder v. Stonack, 141 N.J. 101, 124 (1995) ("Willful misconduct is the commission of a forbidden act with actual (not imputed) knowledge that the act is forbidden.") (internal quotations omitted).

### 2. All Claims Against Johnson (Counts Two, Five, and Seven)

Plaintiff alleges that Johnson violated his rights on the night of October 15, 2011, and brings suit against Johnson for excessive force in violation of the Fourth Amendment under 42 U.S.C. § 1983, for assault and battery, and for wrongful death. In support, Plaintiff notes that "Officer Johnson drove the car which brought the defendants [Wilson and Johnson] to Mr. Webb." Pl. Opp. Br. at 24. Plaintiff argues that "it was Officer Johnson's responsibility to prevent or stop the illegal or inappropriate use of force by Officer Wilson." Id.

As a threshold matter, Johnson had no responsibility to prevent Wilson from shooting, and Plaintiff fails to cite any support for the argument that he did. Further, the record contains no facts that indicate that Johnson used any force whatsoever in interacting with Webb. In fact, Johnson and Webb had no contact at all. Johnson drove the police vehicle that pulled up behind the Chrysler, and Johnson witnessed Wilson's interaction with Webb. Johnson's actions did not contribute to the shooting of Webb, or to Webb's eventual death. As Plaintiff has failed to raise a genuine issue of material fact as to Johnson's liability for Webb's injuries, Johnson is entitled to summary judgment on all counts.

### 3. Claims Against the Newark Police Department under § 1983 (Counts One and Four)

Plaintiff brings this action against both the City of Newark and the Newark Police Department. The police department, however, is not a proper defendant in this case. For purposes of § 1983 liability, a city and its police department are treated as the same entity. Bonenberger v. Plymouth Twp., 132 F.3d 20, 25 n.4 (3d Cir. 1997). "[P]olice departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." Padilla v. Twp. of Cherry Hill, 110 Fed.App'x. 272, 278 (3d Cir. 2004) (citation and internal quotation marks omitted). The Newark Police Department is entitled to summary judgment on Counts One and Four, the two counts brought under § 1983.

### 4. Claims Against DeMaio Under § 1983 (Counts One and Four)

Plaintiff alleges that DeMaio "in his capacity as Police Director of the Newark Police Department in Essex County, New Jersey, and the Defendant City of Newark, implicitly or explicitly adopted and implemented careless and reckless policies, customs, or practices, that include, among other things, allowing employees of the Newark Police Department to confront citizens with excessive lethal force where less severe alternatives existed." Am. Compl. ¶ 138. Defendants counter that DeMaio cannot be held liable under § 1983 because plaintiffs have not alleged any individual wrongdoing on his behalf. The Court agrees with Defendants.

To be held liable under § 1983, a named defendant must have had "personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of respondeat superior." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-91 (1978)); see also Ashcroft v. Iqbal, 556 U.S. 662, 676

(2009). Plaintiff cannot point to any facts in the record that establish DeMaio's personal involvement in the wrongdoing he alleges. Plaintiff directs the Court to Officer Wilson's personnel file which contains 59 complaints, including 24 involving the alleged use of excessive force. See Pl. Opp. Br., Ex. 10 ("Wilson Officer History), ECF No. 68-14. But of those complaints, only one involved the discharge of a firearm—a situation during which Wilson allegedly shot at a dog. Def. R.56 Stmt., Ex. U, ECF Nos. 64-24, 64-25. Furthermore, Plaintiff does not provide any evidence that DeMaio, the then-director of the Newark Police Department, had any personal knowledge of one of his officer's personnel files; rather, Plaintiff asks the Court to draw the inference that DeMaio himself knew and chose to ignore Wilson's record.[11]

Even if Plaintiff could point to facts demonstrating that DeMaio had personal involvement in the events of October 15, 2011, the Court would still grant summary judgment for DeMaio on the § 1983 claims because there has been no constitutional injury in this case. The Court has concluded that Wilson's actions did not deprive Webb of his Fourth Amendment rights. Without a violation of a constitutional right, there can be no liability under § 1983. Estate of Smith v. Marasco, 318 F.3d 497, 505 (3d Cir. 2003) ("[T]he initial question in a section 1983 action is whether the plaintiff has alleged a deprivation of a constitutional right at all.") (internal quotation marks omitted). DeMaio is entitled to summary judgment on Counts One and Four.

### 5. Claims Against the City of Newark Under § 1983 (Counts One and Four)

Plaintiff alleges that the City of Newark "adopted policies, procedures, practices or customs within the Newark Police Department that allow, among other things, the use of excessive

---

[11] "[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each and every essential element of his case." Orsatti v. New Jersey State Police, 71 F.3d 480, 484 (3d Cir. 1995).

force when other more reasonable and less drastic methods are available." Am. Compl. ¶ 89. As a general rule, an individual may sue a local government "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 690.

Plaintiff's claim against the City of Newark fails because there was no underlying violation of his constitutional rights. Blair v. City of Pittsburgh, 2017 WL 4309942, at *4 (3d Cir. 2017) (citing Mulholland v. Gov't Cty. of Berks, 706 F.3d 227, 238 n.15 (3d Cir. 2013) ("It is well-settled that, if there is no violation in the first place, there can be no derivative municipal claim.")). Without a predicate constitutional injury for which it can be held responsible, the City of Newark is entitled to summary judgment on Counts One and Four.

### 6. Remaining State Law Claims Against DeMaio, the City of Newark, and the Newark Police Department (Counts Five, Six, and Seven)

Plaintiff brings three remaining claims against DeMaio, the City of Newark, and the Newark Police Department (the "Municipal Defendants") under the NJTCA: for assault and battery under a theory of respondeat superior, for negligent hiring and retention, and for wrongful death. The Municipal Defendants are entitled to immunity from liability under the NJTCA on all three claims.

NJTCA provides immunity to public entities for acts of their employees when those employees themselves are entitled to immunity under the Act. N.J.S.A. § 59:2-2(b) ("A public entity is not liable for an injury resulting from an act or omission of a public employee where the public employee is not liable.") Because the Court has found that Wilson is entitled to immunity from liability under the NJTCA, the Municipal Defendants are entitled to immunity as well. See

Kowalsky v. Long Beach Tp., 72 F.3d 385, 392 n.8 (3d Cir. 1995). Accordingly, Defendants are entitled to summary judgment on Counts Five, Six, and Seven.

## IV. CONCLUSION

For the reasons set forth herein, Defendants' motion for summary judgment is **GRANTED**. An appropriate Order accompanies this Opinion.

**Dated: January 29, 2018**

                                            */s Madeline Cox Arleo*
                                            **Hon. Madeline Cox Arleo**
                                            **United States District Judge**